

ENTERED
01/20/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| IN RE: § | |
| GERALD L. CRAIN; aka CRAIN; aka § | CASE NO: 14-20247 |
| CRAIN, *et al* § | |
|   Debtor(s) § | |
| § | CHAPTER 13 |

### MEMORANDUM OPINION

  Navy Federal Credit Union seeks to dismiss this Chapter 13 bankruptcy case based on the Debtor's use of an incorrect value for Navy's collateral. Navy failed to object to the use of the incorrect value at confirmation and is now bound by the value in the confirmed plan. That apparently incorrect value resulted in the conversion of Navy's claim from a claim secured by a second lien on the home to a general unsecured claim.

  Navy's motion is an attempt to revive its lien after the deadline for a creditor to seek revocation of a confirmed plan has passed. 11 U.S.C. § 1330. Because the § 1330 deadline has passed, confirmation may only be revoked by the Court's *sua sponte* action. Navy may not request such relief. Accordingly, Navy's motion is denied.

### Background

  Gerald and Cathy Crain filed this case on June 3, 2014. (ECF No. 1). The Crains' original schedules indicated that the value of their principal residence was $55,936.00. (*Id.* at 8). The Crains' residence was encumbered by two liens, both held by Navy Federal Credit Union. Their schedules indicated that Navy held a first lien on the residence in the amount of $60,660.00. Navy's second lien was in the amount $33,769.20.[1] On August 26, 2014, and October 9, 2014, the Crains filed motions with the Court requesting approval to include additional provisions in their plan, including a provision stripping Navy's second lien on the

---

[1] Navy's amended proofs of claim for the first and second lien are for $68,857.07 and $52,030.15, respectively.

residence alleging that it was wholly unsecured. (ECF Nos. 29 and 40). Navy was served with the motions, but did not object. The Court granted the unopposed motions. (ECF Nos. 36 and 44). On November 7, 2014, the Crains filed a third amended plan containing the lien strip provision. (ECF No. 47). Navy again failed to object. On December 22, 2014, the Crains' third amended plan was confirmed. (ECF No. 49).

On July 12, 2016, Navy filed a motion to vacate the order confirming the Crains' plan and a motion to reconsider the same. (ECF Nos. 60 and 61). On August 22, 2016, Navy filed a motion to modify the confirmed Chapter 13 plan. (ECF No. 72). All of Navy's motions revolved around one primary contention: the value assigned to the Crains' principal residence in their initial schedules was erroneous, and therefore, Navy's second lien should not have been stripped.[2] (ECF No. 71-5). Navy also objected to the section of the plan in which the Crains included the lien stripping provision. Notwithstanding the valuation error, and the failure to put the lien stripping provision in the correct section of the plan, the Court found that Navy had adequate notice of the lien stripping and had an opportunity to challenge it before the Crains' plan was confirmed. Accordingly, on September 16, 2016, the Court issued an Order denying Navy's motions. (ECF No. 78). Additionally, the Court ordered the Crains to amend their schedules to accurately reflect their residence's value in light of the error. (*Id.*).

On September 28, 2016, Navy filed a motion to dismiss this case. In its motion, Navy argues that dismissal is appropriate because the Crains failed to comply with their duty to fully and accurately disclose assets based on their personal, good faith belief. 11 U.S.C. § 521; (ECF No. 80 at 3). Additionally, Navy argues that dismissal is appropriate because the Crains failed to comply with local rules with respect to lien stripping. (*Id.*). Essentially, Navy raises the same

---

[2] Indeed, an accurate interpretation of the San Patricio County tax appraisal, the document upon which the Debtors' claimed to have relied to establish value, reflects that in 2014, the Debtors' residence had a total market value of $135,194.00, substantially more than the Debtors' scheduled value of $55,936.00.

arguments in its motion to dismiss that it did in its previous motions. Navy requests the Court either dismiss this case without prejudice or fashion other relief that would allow Navy to retain its second lien on the residence. On November 15, 2016, the Court held an evidentiary hearing on Navy's motion. The Court allowed, but did not require, the parties to submit post-trial briefs. The Court took the matter under advisement on December 2, 2016.

## Analysis

Revocation of a Chapter 13 plan confirmation order is extraordinary relief. *In re Leverett*, 486 B.R. 391, 394 (Bankr. W.D. Tex. 2013). The Code explicitly outlines a procedure by which a party in interest may, within 180 days of confirmation, request revocation of a confirmation order. 11 U.S.C. § 1330(a). In such circumstances a court may revoke a confirmation order if it was procured by fraud. *Id.*

The Fifth Circuit has held that a court may revoke a confirmation order under its equitable power granted by 11 U.S.C. § 105. *In re Thomas*, 223 F. App'x 310, 314 (5th Cir. 2007) (citing *Nikoloutsos v. Nikoloutsos (In re Nikoloutsos)*, 199 F.3d 233, 236 (5th Cir. 2000) ("the fact that the Bankruptcy Code may allow parties in interest to request revocation of a confirmed plan does not prevent the court from taking the action *sua sponte*."). In *Thomas*, the Fifth Circuit stated that a debtor may not retain the benefits of a Chapter 13 confirmation that they obtained through a "materially false representation which was either known by him to be false or made with reckless disregard for the truth." *Thomas*, 223 Fed. App'x at 314. It is undisputed that more than 180 days have elapsed since the Debtors' Chapter 13 plan was confirmed. Though framed as a motion to dismiss, Navy asserts no statutory basis for dismissal. In substance, Navy requests the Court invoke *Thomas* and act *sua sponte* to exercise its equitable power to grant Navy relief.

The fact that Navy filed this motion to ask the Court to act *on its own motion* is not lost on the Court. This is not a situation in which the Court was not fully apprised of the facts.[3] As set forth above, Navy previously presented the factual scenario to the Court. Had the Court perceived fraudulent or reckless conduct, the Court could have then acted *sua sponte.*

*Thomas* allows a court to vacate confirmation on its own motion. It does not allow a party in interest to file a motion seeking relief that they are not entitled to seek under the Code. In *Thomas*, the court became aware through the course of considering an objection to a proof of claim that the debtors may have intentionally misled the court. *Thomas*, 223 Fed. App'x at 313. The court set a hearing and ultimately determined that the debtors filed vague and false documents with the intention of misleading the court. *Id.* In response, the Court *sua sponte* vacated the confirmation order and levied sanctions against debtors' counsel. *Id.* No party could have requested the court vacate the confirmation order in *Thomas* because 180-days had passed since the debtors' plan was confirmed. Similarly, it would constitute a blatant end-run around 11 U.S.C. § 1330 for Navy to file a motion requesting the Court vacate confirmation on its own motion. Navy is not entitled to seek such relief, and has not asserted another basis for dismissal. Accordingly, Navy's motion is denied.

### Completeness

For the purposes of completeness, the Court will explain why *sua sponte* action is unwarranted.

Navy argues that the evidence introduced at the November 15, 2016 hearing establishes that the Crains, at a minimum, acted with reckless disregard for the truth when they represented the value of their residence at $55,936.00. (ECF No. 90 at 16). Conversely, the Crains argue

---

[3] The Court recognizes that situations might arise in which previously undisclosed alleged misconduct could be brought to the Court's attention. This case does not present such a situation.

that at the time they represented the value of the residence in their schedules, they neither knew the value to be false, nor made the value representation with reckless disregard for the truth. (ECF No. 91 at 1).

*Evidence*

The evidentiary record is not extensive. The only evidence that bears on what the Crains knew when they asserted the value for their residence in their schedules is (1) the San Patricio County tax appraisal, (2) the Crains' bankruptcy schedules from a prior bankruptcy case, and (3) the testimony of Gerald Crain at the hearing on November 15, 2016.

*San Patricio County Appraisal*

Debtors' allege that they arrived at their belief in the value of their residence after reviewing the San Patricio County's appraisal of their residence. The relevant portion of the appraisal is reproduced below:

| APPRAISAL INFORMATION | LAST YEAR | PROPOSED THIS YEAR | PROPOSED 2014 TAXABLE VALUE | ACCOUNT NUMBER / PROPERTY DESCRIPTION |
|---|---|---|---|---|
| Total Market Value | 50,851 | 67,597 | | ACCT #: 0305-0004-0007-002  PARCEL: 50339 |
| HS Land Market Value | 4,095 | 4,095 | | ADDR: 02959 PENOAK AVE |
| HS Structures(Buildings) Value | 46,756 | 63,502 | | INGLESIDE, TX 78362 |
| | | | | ABST/Block/Lot: |
| Total Homestead Cap Value | 50,851 | 55,936 | 55,936 | LEGAL: LT 7 BLK 4 ING-GARDEN OAKS #4 |
| Total Proposed Taxable Value (with Homestead Limit) | 50,851 | | 55,936 | 0.289 ACRES |
| | | * HOMESTEAD CAP APPLIED | | |
| emptions: HOMESTEAD - DISABLED VET | | | | |
| | | | | ACRES: 0.289  INTEREST: 0.500000 |
| | | | | CATEGORY: A1  DV AMT: 7,500 |

| Taxing Units | Last Year's Taxable (less exemptions) | Proposed Taxable Value | Proposed Exemptions | Proposed Taxable (less exemptions) | Estimated Tax Rate | Proposed Tax Estimate |
|---|---|---|---|---|---|---|
| San Patricio Co | 40,851 | 55,936 | 10,000 | 45,936 | 0.450000 | 206.71 |
| County Special | 40,851 | 55,936 | 10,000 | 45,936 | 0.070000 | 32.16 |
| Ingleside ISD | 35,851 | 55,936 | 15,000 | 40,936 | 1.080000 | 442.11 |
| City Ingleside | 43,351 | 55,936 | 7,500 | 48,436 | 0.625000 | 302.73 |
| SanPat Co DrDis | 40,851 | 55,936 | 10,000 | 45,936 | 0.060068 | 27.59 |
| ESTIMATE OF PROPERTY'S TOTAL TAXES: | **(THIS IS NOT A TAX BILL. DO NOT PAY)** | | | | | 1,011.30 |

(ECF No. 71-5).

The Crains claim that they provided the appraisal document to their attorney, whose staff then prepared the schedules. The Crains reviewed the values in the schedules for accuracy, and signed the schedules under oath and penalty of perjury. The Crains allege that their belief in the

value of the home was informed by the county appraisal. Initially, the Court recognizes that the appraisal appears to reflect a total market value for the residence of $67,597, of which only $55,936 is taxable value for the purpose of property tax liability. However, a more careful inspection reveals that the value represented in the appraisal accounts for only a one-half interest in the residence:

```
ACRES: 0.289         INTEREST: 0.500000
CATEGORY: A1                              DV AMT: 7,500
```

(ECF No. 71-5). Accordingly, to produce a value that captures San Patricio County's belief as to the market value of a 100% interest in the residence, the total market value must be multiplied by two. Although this is the correct reading of the San Patricio County record, this conclusion would not be obvious to most observers. Most importantly, there is a complete absence of evidence that the Crains intentionally misinterpreted the appraisal.

There is no evidence that the Crains had an independent belief as to the value of their residence. The evidence is that the Crains relied solely on the appraisal district records to establish a belief in value. Under such circumstances, it would be difficult for the Court to conclude that the Debtors acted with reckless disregard for the truth when they assigned the value of $55,936.00, much less conclude that they knew it to be false when they assigned it.

Navy argues that even if the tax appraisal had represented the full value of the residence, the Debtors schedules reflect the lower taxable value of the residence ($55,963.00), instead of the total market value ($67,597.00). (ECF No. 80 at 3). To the extent Navy is inviting the Court find this behavior to be consistent with bad faith, the Court declines. The fact that the Crains assigned a value to their residence consistent with the appraisal's "taxable value" figure instead

of the "market value" figure was an error. But, there is no evidence that the error was committed in bad faith, fraudulently or recklessly.

The tax appraisal records are public records. Navy had full access to the records. It makes no sense to infer that the Crains acted in bad faith, fraudulently or recklessly when they relied on public records equally accessible to Navy. Navy, with full notice, chose not to contest the valuation in the plan.

Additionally, the Crains argue that the San Patricio tax appraisals that they receive annually have reflected the one-half interest value since as early as 2011.[4] (ECF No. 71-1). This evidence suggests that for at least three years prior to the filing of this bankruptcy case, the Crains consistently received appraisals that could be fairly, though incorrectly, read to reflect a low valuation of their residence. The fact that the Crains received notices of value reflecting a one-half interest for at least three years prior to filing bankruptcy undermines Navy's argument that the Crains should have known their house was worth more than they claimed in their schedules.

*Debtors' 2008 Bankruptcy Schedules*

Navy argues that the schedules in the Crains' 2008 bankruptcy case support its position. The Crains filed a chapter 13 bankruptcy case in 2008 in which they list the value of their same residence at $101,754.00. (ECF No. 71-9 at 1). Navy argues that the disparity between the 2008 valuation and the 2014 valuation strongly suggests the Crains knew or should have known that the value was substantially higher than what was asserted in this case. (ECF No. 90 at 24). The Crains argue that they believed the value of the home reduced substantially since 2008 as a result of the depressed real estate market post-2008, and the closing of a nearby naval base that

---

[4] Debtors allege that they have consistently received tax appraisals of their residence reflecting a one-half interest since 2008, but the evidence available to the Court only includes five years of appraisal value history. (ECF No. 91 at 3; ECF No. 71-1 at 2).

concluded in 2010. While the 2008 value is greater than the 2014 value by nearly a factor of two, it is not unreasonable that the Crains' belief regarding value was informed by events that occurred in the eight years between the two bankruptcy cases. At issue today is what the Crains believed about the value of their residence at the time they filed their schedules in this case. The fact that they believed the value to be substantially more eight years ago does not establish that they knew the value they asserted in their schedules was erroneous, or that they were reckless when they asserted it.

*Testimony of Debtor Gerald Crain*

At the November 15, 2016, hearing on Navy's motion to dismiss, live testimony was adduced from Gerald Crain. It is the Court's duty to assess and weigh the credibility of witnesses. *In re Bigler LP*, 458 B.R. 345, 367 (Bankr. S.D. Tex. 2011) (citing *Port Arthur Towing Co. v. John W. Towing, Inc. (In re Complaint of Port Arthur Towing Co.)*, 42 F.3d 312, 318 (5th Cir. 1995)). Gerald Crain responded to questions clearly, completely, and directly. *See, e.g., In re Ali*, 2015 WL 4611343 at *4 (Bankr. W.D. Tex. July 23, 2015) (analyzing the clarity, completeness, and quality of witness responses in order to make credibility determinations). Furthermore, his testimony was uncontested. The Court finds Gerald Crain to be a credible witness.

In relevant part, Crain testified that he purchased the home for $80,000.00 in 2003, and in 2006 added two bedrooms onto the home using proceeds from a $50,000.00 home equity loan. Crain responded in the negative when asked if he noticed anything odd about the valuation reflected in 2014 tax appraisal, and indicated that he had seen similar valuations in previous tax appraisal notices from San Patricio County. Crain responded in the affirmative when asked if the value he asserted in his schedules came solely from the tax appraisal document. It is this final

question that is most significant.  Because the Court finds Gerald Crain to be a credible witness, and because his testimony was uncontested, the Court accepts as true Crain's statement that his belief as to value derived solely from the tax appraisal.

The question most relevant to the issue in dispute is whether the Crains believed the value of the residence to be accurate when they asserted it in their schedules.  Crain was not asked that direct question.  Despite the fact that Navy (who had the burden of proof) failed to ask that question, the clear inference of this credible witness's testimony is that he believed that he was being truthful.

Navy makes much of the Crains' failure to make further inquiry when faced with the annual tax appraisals they misinterpreted to reflect a value incongruous with other indicators of value.  (ECF No. 90 at 21).  It may have been an error for the Crains to rely solely on the tax appraisal for information relating to value in light of the price at which they purchased the home and the improvements they made thereon, but it does not rise to the level of recklessness.

As this Court has previously held, Navy had substantial opportunity before confirmation to challenge the value the Crains ascribed to their residence.  On two occasions the Crains sent notice of lien stripping to Navy, and Navy failed to object to both of the motions to approve additional provisions to their plan.  All of the Crains' filings, including their second and third amended Chapter 13 Plans containing the lien stripping provisions, were noticed and available to Navy's counsel through CM/ECF.  The Court has previously concluded that Navy was afforded adequate due process in this proceeding.  (ECF No. 78).  Navy now seeks to shift the harm that resulted from sitting on its rights to the Crains by arguing that they wrongfully obtained confirmation of their Chapter 13 plan.  The evidence does not support a finding of such wrongful conduct.  Accordingly, the Court chose not to take action *sua sponte* to provide Navy relief.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **January 20, 2017.**

_____<br>
Marvin Isgur<br>
UNITED STATES BANKRUPTCY JUDGE